Let me call the case of Pittman v. Secretary of Corrections, and we'll be happy to hear from counsel for the appellant. Thank you, court, counsel. For the record, my name is Martin McClain, and I'm here today representing David Pittman. This court granted a certificate of appealability on two issues, so there are two arguments in the brief. The first one concerns penalty phase ineffective assistance of counsel, and the second one concerns the ruling not to allow the defense to present evidence concerning another individual's confession to the murders. First, as to the penalty phase IAC claim, the purpose of the Strickland standard is to make sure that an adequate adversarial testing occurred and produced a reliable result that we can have confidence in. I just want to alert the court that Florida law has changed. We're in a unique circumstance here. We're reviewing what happened at the trial, at the sentencing, at the penalty phase, and the effectiveness of counsel in a proceeding where the jury returned an advisory verdict, and if six jurors vote for life, a life recommendation, it's a life recommendation, and it's a majority vote for death recommendation. If this court orders a resentencing, if anybody orders a resentencing in the case, an entirely different law will apply, and the state will have to convince the jurors to unanimously recommend death for a death sentence to be imposed. Otherwise, it's a life sentence. The procedure simply changed, and I don't know how to factor that into this analysis. Of course, the difficulty you face is the ruling of the Florida Supreme Court in Hearst and its progeny. They didn't make it retroactive to cases that arose before the decision in Ring. But on March 13th, the legislature passed Chapter 2017-1, and it does apply retrospectively to anybody who gets a resentencing. Right. So, for example, the Florida Supreme Court just ordered a resentencing for James Card, whose conviction was final in 1984. He used to be sentenced on a 1984 conviction, and he will get the right to a life sentence unless there's a unanimous death threat. I just want to point that out to the court. The problem with the argument, though, or the suggestion, is it does not alter the burden or the standard we have, even if it informs and provides an interesting backdrop. I understand, because I understand that the ineffectiveness claim is looking at what happens as opposed to what will happen, but to the extent that… You've got to show us that the Florida Supreme Court's determination on Strickland was either contrary to or an unreasonable application of clearly established Supreme Court law. Yes, Your Honor. That it was an unreasonable application of or of Strickland. Yes, Your Honor. And I submit that that is present here, in that the Florida Supreme Court's analysis didn't comport with clearly established law. It did not actually analyze the adequacy of the investigation and the presentation of the mitigation. It just simply reviewed what the lower court, the Supreme Court, had done, found that it was supported by evidence, and affirmed. Now, let me ask you this question. Is there any evidence that came about at the post-conviction hearing, at the 3.851 hearing, that was not presented in any way whatsoever at the trial or penalty phase for Mr. Bishop? Something that was just completely new. Well, I mean, many of the details were new. I mean, it's sort of like… No, no, I know, I know. You have an argument about details and an argument about corroboration. Well, I'm trying to… Success. But my question is, were there any categories of evidence that were new? Like, for example, that there was mitigation X and there hadn't been a word about mitigation X at trial or at the penalty phase. I mean, I'll just sort of go through the things that pop into my head. I'm not sure that, for example, Dr. D indicated David Pittman told him he'd been sexually abused. The judge didn't accept that, and no one talked to the other family members to learn that Brother Michael would have confirmed it, or Brother Bill would have confirmed it, and talked about the sexual abuse that was going on. So that didn't get presented. All that got presented was, in essence, a statement made by David Pittman to Dr. D, which arguably could be self-serving. No one else was talking. Another example would be Bob Barker, who was a guilt phase witness. You know what's interesting about it is, in the collateral hearing when Dr. D was called again, on cross-examination he was asked this question. This is now after everything old and everything new was in front of him, and the question went like this. Quote, is there anything new that you would change about your opinions you gave during the course of the trial? He responded, no. It might be a little additional in terms of the corroboration I have and so forth, but I think it would be essentially the same. So you have the testimony from the shrink saying, look, I said what I had to say. I propounded the opinion I thought was relevant about my diagnosis of his mental condition and his disability and his organic brain damage and a whole variety of things, attention deficit disorder. But really my opinion is the same. There's some new stuff maybe that would have been corroborative in nature. He doesn't use the word we would use as lawyers, cumulative. But quote, it would be essentially the same. So there's nothing new that would have affected his opinion, right? At least that's what he tells us. What would have affected his conclusions? There was information that would have supported him. Well, the words he used were opinions. Opinions, conclusions. Okay. I don't know. I mean, he identified. The only reason I'm not quarreling over words, I say opinions, because conclusions are stated at a higher order of abstraction even than opinions. I mean, he's got a variety of opinions that he offers. But his testimony was rejected at the trial because it wasn't corroborative. It wasn't included in the sentencing calculus. I mean, to the extent that his opinion is presented without a basis that gives it any credibility and it is rejected and not included in the sentencing calculus, it might as well not have been presented at all. It wasn't weighed. It wasn't included. It was rejected. I mean, for example, he referenced school records supporting his view that Mr. Pittman had brain damage. And those school records were available and not presented. And the judge relied on the absence of any evidence other than what Dr. D said to reject brain damage. Are you arguing then that the sentencing court erred by requiring corroboration? I'm not arguing that. I'm saying that the defense attorney had the corroboration or could have gotten it. But are you saying that the sentencing court should not have required corroboration? The court itself erred. You think that was appropriate what the court did? I mean, I'm kind of stuck with what the court did. What I'm saying is the attorney should have presented the evidence, should have. I mean, you barely have. Yeah, but you've got to show not just that there was a performance defect, but that there's a reason, probability it would have made a difference, i.e., it undermined confidence in the result. And the Florida Supreme Court tells us no. And it's their determination that we're looking at after all, isn't it? Well, they actually just simply deferred to the circuit court. And they didn't consider the fact that no mitigation had been found at the original time. Well, if you look at what the Florida Supreme Court says, they say among other things that Pittman claims that defense counsel was ineffective in the following ways, and there are two, in failing to present four additional witnesses, Barker, Michael Pittman, Gene Wesley, and Tilly Woody, to attest to substance abuse and its lifelong afflictions, and two, in failing to elicit additional information from three witnesses, Tammy Davis, William Pittman, and Dr. D., who testified. The issue was addressed at the evidentiary hearing. Here's what the trial judge says. Based on the record, we conclude that Pittman has failed to show that the post-conviction court erred in denying the claim. The findings are supported by confident substantial evidence, and the court properly applied the law. Pittman has failed to show the counsel rendered deficient performance. And then they go beyond what the trial court did, and they say that the defendant was there by prejudice. The trial court doesn't say anything about prejudice, right? Did the trial court also go off on prejudice? Well, I mean, I thought that the trial court was just saying that there was no obligation to present evidence that was cumulative, and I thought there was some sort of reference that didn't show that it would make a difference. But what you've got to show us is that the Florida Supreme Court's determination was an unreasonable one, that no reasonable jurist, when reviewing this record, could have concluded, A, that the performance didn't fall beneath some acceptable standard, and, B, that you established prejudice. Well, I submit it's contrary to Sears. They didn't do an analysis. If the Supreme Court of Florida had said nothing other than we've reviewed it, we affirm. We deny the petition. We've reviewed the merits, and we deny it. We would still have to make the same analysis and give them the same deference, wouldn't we? They're not obliged to explicate in detail their rationale, are they?  That's not what Porter v. McCollum said. Okay. In Porter v. McCollum, the Florida Supreme Court didn't address sufficient performance, and the U.S. Supreme Court said no deference was due, and it was reviewed de novo by the federal court. If the state court has not reviewed the matter, that's one thing. But if they review the merits and don't propose to give you a detailed explication of their rationale, are you saying they get no deference? Under Porter v. McCollum. The answer is yes, they get no deference. They get no deference where they don't say anything. In Porter v. McCollum, they reviewed sufficient performance. They just didn't make a finding. The difference that I'm trying to get at is it is one thing to say on the one hand you've got A, B, C, and D. On the other hand, you've got X, Y, and Z, and reach no determination at all. And quite another thing to say, we reached the merits. You lose on the merits. Thank you. Goodbye. And they don't give you the explanation or the rationale. In the one instance, there's no determination. In the other instance, there is. But they just haven't explained the rationale. Perhaps they should. It seems to me courts ought to be giving reasons for its rulings, but if they simply rule on the merits, ipsy-dixy, here it is, take it or leave it, is it your view that Porter compels the conclusion that I review that merits determination de novo? Yes, and Sears-Leoptin says there has to be a probing analysis of the prejudice problem. Tell me why the performance, why he violated his performance. And the reason I raise it is, look to me at the first copy. I read the whole record here. They interviewed a whole bunch of folks. They started the penalty phase examination really early on out. You had an experienced criminal defense lawyer in the case. They put nine witnesses on the stand. The transcripts run some 215 pages. Dee struck me as a very sound witness, a good witness. Looked to me like they put on the mother who laid out just a horrible explication of his childhood. They put on other folks to say a variety of other things concerning his background. Why was this baldly insufficient? This wasn't like the last day they found the witness stuck one witness on the stand and left it at that, was it? This was a pretty thorough kind of. This is not that case, this is this case. I understand. And in this case, the problem is he had mitigation, he didn't present, he didn't find mitigation, and as a result, Mr. Pittman had no mitigation in the sentencing calculus way. Your argument is, as best as I can get it from the briefs, is that the lawyer had evidence that he could have obtained to provide more detail and corroboration for some of the testimony, if not all of the testimony, that Dr. Dee and some of the other witnesses provided. Yes. Because he didn't obtain and present that readily available testimony, his performance fell below an objective standard. And because the trial court sentencing order was predicated in part on Mr. Pittman not having been able to establish certain mitigating circumstances due to lack of corroboration, there's prejudice. Yes. And this court not only is bound to accept the facts found by the Florida Supreme Court, you have to accept that Dr. Dee wasn't credible, because that's what the court found. The court didn't accept his testimony. In reading the transcript, the Novel Review could get a different conclusion, but that's not what the sentencing judge found. Did he find him not credible as a witness generally, or not accept his findings? Actually, the specific language he used is he rejected the testimony because there was no corroborating evidence. Okay. On everything? On the statutory mitigating circumstances specifically, and he didn't accept evidence to the non-statutory mitigating either, because there was no connection to the case. Could you address before your time is up the second issue a bit? Yes, Your Honor. You say in your brief that in the direct appeal to the Florida Supreme Court, Mr. Pittman expressly raised a federal constitutional claim and cited the Chambers versus Mississippi. Yes. And obviously what the Florida Supreme Court said didn't address Chambers, at least not explicitly. Is it your contention that we get the Novel Review of that claim here? Yes. It was presented to the Florida Supreme Court in the direct appeal. Chambers was specifically arguing that it had control over a rule of evidence, and the Florida Supreme Court just simply said it didn't find abuse of discretion under the rules of evidence, and said nothing about the constitutional claim. Tell me why you think the evidence that Mr. Pittman wanted to present satisfied Chambers. It's parallel to the evidence against Mr. Pittman. There was no physical evidence linking Mr. Pittman to the crime. There's no physical evidence linking the other two individuals to the crime. However, the state presented evidence that Mr. Pittman had made statements to a jailhouse informant, and there was evidence of George Hodges receiving the letter from his stepson, Mr. Watson, confessing to the crime. Most compelling is Aaron Gibbons, who was the other individual with him, in another incident, had stolen a motor from a boat with another person, and then poured gasoline with a trail, exactly as was done at the Knowles residence. Exactly. That similarity is striking. He also matched the description given of the person walking away from the Knowles car. He watched it, or he did it? Gibbons. There's this sort of parallel thing. I submit there's enough. The defense wanted to run fingerprints. No fingerprints from Mr. Pittman was found on the car. Fingerprints were found. The defense asked to compare Gibbons and Watson's fingerprints, and the court wouldn't allow that. Of course, all of this happens in the middle of the trial is when this is surfacing, and so the defense is trying to present the evidence and, at the same time, having to investigate, and it does have an effect on how the trial proceeds because the defense had intended to focus on Mr. Pittman's ex-wife as the potential murderer and held back in the cross-examination because they were trying to figure out this other situation, even though he made reference to it in his opening statement. Let me come back to a question that Judge Jordan asked you earlier, and that is whether we are to take what the Florida Supreme Court did on this claim, this hearsay constitutional claim, was actually decided on the merits or not by the Florida Supreme Court. When I read what they wrote in round two, I took it to be a merits determination because they say that, and I want to read you the language and ask you to tell me how I could read this as not being a merits determination. They lay out the claim. I'm reading now from the second opinion they wrote, the collateral one, 818 Southern Report of Third Series, 90 Southern Report of Third Series at 818. They don't say a lot. It's really half a page. They say, in this claim, Pittman asserts that this court erred in affirming the trial court's ruling on an evidentiary issue. Then they repeat the totality of what they said in Pittman one, and then they say the following. Pittman asserts that this ruling is contrary to United States Supreme Court precedent, and they cite two cases, Holmes v. South Carolina and Williamson versus the United States, which are due process cases, which are constitutional cases. Then they say, this claim, however, is procedurally barred, citing Porter v. Crosby. Then they have a parenthetical and they say, claims raised in a habeas petition, which petitioner has raised in prior proceedings and, and this is the critical language I want to ask you about, and which have been previously decided on the merits in those proceedings are procedurally barred in the habeas petition. I'm not saying the claim is procedurally barred here. I'm just asking because it's not. I'm simply asking the question of how I can read this in tandem with what they said in Pittman one and not conclude that they ruled on the merits. Isn't this a merit determination when they say claims raised in a habeas petition, which were raised in a prior proceeding like on direct appeal, and which have been, quote, previously decided on the merits in those proceedings are procedurally barred in the habeas petition? Isn't that a merit determination? Aren't they telling us as clearly as they can, we decided this sucker on the merits in round one, and as far as we're concerned, given our state rules, you're procedurally barred from raising it again on round two? It'll speak to me, sir. That is a determination. A merits determination. It's a race adjudicata determination. No, I'm not asking. Race adjudicata. The question is what is the thing that had been adjudicated? That's what we're trying to get at. Did they not decide the claim on the merits? And if the answer is yes, then I can't review it de novo. I have to give it some deference and ask whether this determination on the second issue was contrary to or an unreasonable application of Supreme Court law. That's what I'm trying to get at. How do I review the Florida Supreme Court's rule? I heard you say in response to a question that Judge Jordan asked you that we should be reviewing it de novo rather than through the lens of the DEPA. And if they had a merits determination, it seems to me I have to review it that way. So what am I missing here? I'm obviously missing something. The merits determination was that the rules of evidence control over the constitutional law. They didn't address the constitutional law. They said there was no abuse of discretion under the rules of evidence. Okay, I've got it. Okay, thank you. And you've reserved the full ten minutes. You were answering our questions. Thank you. Good morning. Good afternoon. I should say it's 2.30. I've been saying morning all day, so good afternoon. Tim Freeland here on behalf of the state of Florida. Starting with the first issue, the Strickland claim, this is clearly an EDFA case. And the review of what happened in the state court is going to be restricted by EDFA. Even if we looked at it in terms of feedback here, sorry. Thank you. Even if we looked at it in terms of de novo, it still does not merit relief. Let's take a look briefly at the facts of the case. We know Mr. Pittman was in prison on a grand theft charge when his wife decided that she was going to divorce him. When he was released from prison in January of 1990, there were ongoing troubles between him and his soon-to-be ex-wife. He had difficulty getting access to his children, and he had made threats to her that he was going to turn the town of Mulberry into a battlefield. Shortly after he was released, his sister-in-law filed a criminal charge against him, alleging that he had committed statutory rape against her five years before. Wasn't it the mother-in-law filed about the sister-in-law? That's quite possible. Okay. Yeah. I thought it was the mother who claimed that he had sexually abused or statutorily raped her other sister, his ex-wife's sister. That's possible, Judge. I mean, she was 20 years old, and she was old enough to have filed a charge on her own. But I'm not going to quibble as to who filed the charge. I remember that from the Florida Supreme Court opinion, but maybe I'm wrong, too. No, I'm sure the court's right. You know, she was living with her parents, and I'm sure that Mr. Pittman drew the conclusion that because the fact that his family was all one unit, they were responsible for trying to put him back into prison. So he had a motive for wanting to attack the family. First of all, to punish his soon-to-be ex-wife, and also revenge. The actual crime scene and the trial court in its sentencing order found these facts to be particularly compelling. He, the murderer, Pittman, showed up at his father's house, and his father lived a few blocks away from the Knowles residence. Pittman had not lived with his father for quite some time. But the night before the murder, he shows up at his father's house. In the middle of the night, he left through an unlocked door. Nobody saw him leave his father's house. When he gets to the Knowles house, and we know this information because he confessed to Carl Hughes, who was an inmate with him, he cut the phone lines, talked his way into the house, killed Bonnie Knowles, the 20-year-old, stabbed her to death, cut her throat, encountered the mother out in the hallway, stabbed her to death, and then encountered the father, who was at that time standing by the phone. It's a reasonable inference that he was trying to call for help. And he stabbed and killed him. Afterwards, he set the house on fire, stole Bonnie Knowles' car, and made his getaway. All of this happened before 3.40 a.m., because we know that there's a report that there was a flash on the horizon by somebody at 3.40 a.m. Was her car the Toyota? Yes, Bonnie Knowles' car was the Toyota. So he had to have secured the keys before setting the house on fire. These facts impressed the trial court in its evaluation of the penalty phase, because the defense sought to establish that the defendant was acting under extreme emotional or mental disturbances, for one. And the trial court felt that someone who was capable of engaging in that kind of deliberate behavior was not suffering from that kind of difficulty. You may be right that, at the end of the day, that's far too much for Mr. Pittman to get over. But as I've read the opinions below, the state trial court opinion on the collateral petition, the Florida Supreme Court decision, the district court's order, nobody has really addressed Mr. Pittman's contention. Whether it's right or wrong, that the evidence that he says defense counsel did not obtain and present was critically important, because it provided the sort of corroboration that the initial trial court found lacking. And it seems nobody has performed that analysis. I mean, nobody has said he's right about that or he's wrong about that. And even if he's right, he loses because everything else was so aggravating in nature. But nobody has seemed to do that analysis about corroboration. And at least at first glance, the argument makes some sense at an abstract level, because if a judge says, okay, I've heard this evidence, but I don't believe it because there's no corroboration, and the evidence you say should have been presented provides the corroboration, you start thinking, well, maybe on that point there's something to it. Could you address that issue? Yes. I think we can dispense with it fairly quickly. The problem is, let's assume for a moment that we're looking at a de novo. No, I don't even care about that. Nobody has really addressed it yet. And I'd like to have somebody from the state, if we don't have a court below doing it, for you to take it up and at least give me your thoughts about it. My thoughts are this. Sitting at our position, 20 years, the sentencing happened in 1991. How many years after the sentencing? We know exactly why the trial court chose not to accept his mitigation, why he was not persuaded by the mitigation. But trial counsel at the time of the proceeding could not know in advance that the trial judge was not going to accept this because of an absence of corroboration. I think the thrust of Judge Jordan's question is, why did the trial court here reject the mitigation? Did he reject it because of some corroborative information that was out there and wasn't used? Or did he reject it because of the nature of the circumstances here that reflected a willfulness, a deliberateness, a planning that was at war with the notion that these other circumstances made him do it? Why did the trial court, if you read his statement, reject the mitigation theory? Because it wasn't persuasive. Why did he find it wasn't persuasive? Was it because there was nothing to corroborate it or was it for some other reason? It was not strictly because there was no corroboration. The court found, even if we look at the sentencing order, the court found in the sentencing order that the way that the crime was committed refuted the mitigation that the defense sought to present. It isn't merely a lack of corroboration. It's that the facts don't jive. Somebody who is acting under that kind of disability, the extreme emotional, mental disturbances, should not be capable of conducting this kind of a detailed planned homicide to the extent that he almost got away with it. My opposing counsel is correct. There is no evidence linking Mr. Pittman to the scene. The evidence comes from the fact that he was observed with Bonnie Knoll's car later on, and the person who stole the car had to have been the one that committed the offense. That's the reason why the trial court rejected this mitigation. When you review what he does, what the trial court said, as to the mitigating circumstances, the trial judge references that there were three first-degree murders. He references that the defendant visited his father's house on the eve of the murders. The first time in months he had been to the father's house, that he left the house by an outside door. He walked a short distance in the early morning to the victim's house. There he cut the telephone lines outside of the house. He entered the home. He systematically killed three people. He then proceeded to pour gasoline about the house. Then in the yard, he set the fire. He secured the keys to the car. He took the car and burned that too later. He says the defendant's actions and all other evidentiary circumstances considered show a deliberate conscious plan to kill and avoid apprehension. They do not indicate a person functioning under the influence of extreme mental or emotional disturbance in regard to the influence of alcohol other than the expert opinion. The record does not reflect it had been a factor in the commission of the murder. Then he says, and this is what I really want to get at, except for the solicited opinions of the defendant's expert that the defendant's capacity to conform his conduct to the requirements of the law was substantially impaired, this mitigating circumstances is unsupported by any other evidence in the record. To the contrary, the facts reveal and then he lays out again the nature of the killings, the effort to destroy evidence and to effectuate a getaway and establish an alibi which he says were the product of deliberate thought. Then he says the expert has offered an opinion as a mitigating circumstance that the defendant suffers brain damage. This is item three. Other than this opinion, there exists, and I think this is where the issue has come up. Other than this opinion, the trial court says, there exists no corroborating evidence to suggest the presence of this damage or its degree nor its actual relationship to the murders. Then he says there was additional mitigating evidence offered about hyperactivity, that he may have suffered physical and sexual abuse as a child, that he was an impulsive person with memory problems and impaired social judgment. Then he says taking all these mitigating circumstances in a light most favorable to the defendant, the court finds they have little if any connection to the murder. The record speaks clearly of an individual that went about the killings and the destruction in a deliberate, methodical, and efficient manner et cetera, et cetera, et cetera. What are we to make of this statement? That's the whole context of what he said. I don't want to rip out of context a single shard or expression. I want to look at the totality. Having looked at the totality, there's one point where he says, the expert has offered an opinion as a mitigating circumstance that the defendant suffers brain damage. Other than this opinion, there exists no corroborating evidence to suggest the presence of this damage or its degree, nor its actual relationship to the murders. What are we to make of that comment? Is there anything in the collateral evidence that would have provided corroborating evidence to suggest the presence of this damage or its degree or its relationship to the murders? That seems to be the heart of the question, or at least the heart of the claim raised by Mr. Pittman here in this habeas. Well, I'm having a hard time with this because I don't see the counsel needed to do more than what he actually did. He put on the testimony he had from his expert, reasonably anticipating what was going to happen at the penalty phase. He put on this testimony. This is his expert. Now, the fact that the trial court accepted it or rejected that expert, this is not something counsel can know in advance, nor is it the measure after the fact, looking at it, nor is it the measure- I think the question is, did he reject it because there was no corroborating evidence, or did he reject it because it was at war with the nature of the crime and how it was committed? I think that it was because it was at war with the nature of the crime and the way it was committed. It doesn't make sense that someone with the degree of brain damage, specifically, would be capable of committing the crime in the way that this crime was committed. But then you would have expected- I shouldn't say we. I would have expected an order saying, okay, I'll accept the expert's testimony that he had some emotional disturbance that he had some brain damage, but given the whole record before me, I don't find that those issues are causally connected to the murders in this case. Then you're like, okay, he understood it. He said they're not causally connected. They don't excuse the conduct, and that's why I'm giving them little or no weight. The aggravating outweigh the mitigating. I'm imposing sentences of death. That would have been a different sort of order, I guess. You're saying it wasn't necessary. No. I think what you were saying, and maybe I misapprehended, is that he said just that in the following paragraph under four. Taking all these mitigating circumstances in a light most favorable to the defendant, the court finds they have little, if any, connection to the murder. The record speaks clearly of an individual who went about the killings and the destruction of evidence in a deliberate, methodical, and efficient manner to such an extent that detection was nearly avoided. But for Lady Picking Roses early one morning, who happened to see the defendant running from Bonnie Knoll's burning car, the case might never have been successfully prosecuted. The record reflects blah, blah, blah. He cut the lines in all of this. Your argument is that's why the court rejected what Dr. D said, not because there wasn't additional cumulative evidence that said in more detail what the witnesses, the petitioner called, said in the first place. That's your position. Let me ask you, would it matter anyway, given what the Florida Supreme Court said? What am I judging? Am I judging the trial court's determination here, or am I required to look at the last and highest court of the state, which, if it ruled on the merits, and it did, reached a determination that Strickland, you just can't make a Strickland claim here. I think we have to look at the last reasoned decision, which would be what the Florida Supreme Court said. To the extent that they covered it, to the extent that they addressed it on the merits, that's what we have to look at. We don't really need to look through to what the trial court did unless there's an absence. What about the second issue? If we turn to the second issue, which is the hearsay issue, I agree with the court that, in terms of what the proper standard of review is, I agree with the court. I'm assuming that that's where the court is going with this. This is not a- I was just asking a question. Whether it was DeNova or not. It struck me, speaking for myself, that it's hard to say it's DeNova when the Supreme Court of Florida tells me they're reviewing it on the merits. Then let me state my position. My position is, is that DeNova review is not the correct standard of review here. We know that the trial court addressed this on the merits. The trial court addressed this on the merits because if we look, I have it here in front of me. I know the court's familiar with the record, but let me just direct you specifically to where the trial court looked at this. This is in, I think it's A18, Volume 18 of the trial court record. The Hodges issue begins being discussed on page 3494 of the record. The ruling is at page 3556 of the trial court record. Counsel Bob Norgaard, extremely experienced capital attorney, spent more than 60 jury trials, capital jury trials under his belt. There's more than 100 pages of transcript here talking about this particular issue. Ultimately, what the trial court did was it found that applying Chambers, the facts of the case to Chambers, the trial court said, I don't find there's sufficient corroboration here to justify admitting this testimony. That was the ruling of the trial court. Now, we know that when the Florida Supreme Court elects not to address a constitutional issue, that doesn't mean that it's ignoring it. The federal courts have never said that the state courts need to write their opinions in a certain way or else we're going to reverse. We've never said that. What we do is we look to, was the matter before the Florida Supreme Court? Clearly it was. It was briefed by both parties, and the Florida Supreme Court elected to write its opinion in terms of state court law. But certainly allowed to do it. Okay. Judge Marcus and I may ultimately have a difference of opinion on this issue, but let's break it down into two quadrants. If all you had was the Florida Supreme Court decision on direct review, and nothing at all had been said on the opinion on collateral review, do you think the Johnson presumption would have been overcome? Johnson presumes that if a claim is presented, but the state court doesn't address it, you assume that the state court nevertheless rendered a decision on the merits. But that's a rebuttable presumption. It is. Right? That's what Johnson says. So if all you had was the Florida Supreme Court opinion on direct appeal, would you think that the Johnson presumption has been overcome or not? My argument would be more difficult in that circumstance. Right, because there you've got an express federal claim, and all they're talking about is a state evidentiary issue. Right. So your argument is based on, or mostly based on, what Judge Marcus said, which is that when you get the further explanation in the collateral opinion, you can infer that the Florida Supreme Court addressed it on the merits. Correct. You'd have a much harder argument without the collateral opinion. You could say, well, they raised chambers, they briefed the constitutional question, but you couldn't tell that the Supreme Court of Florida had addressed it. It would be heard. All they reference is the state law concerning hearsay. So you have to say you have to read the two in pari materia, and when you read the second one, it's hard to say when the Supreme Court of Florida cites a case for the proposition that is procedurally barred, where it's been previously decided on the merits, that tells you unambiguously out of their own mouths that they've decided it on the merits. I believe it does. Therefore, my position would be we don't have de novo review here. We have to give deference to what the state court did. And the state court concluded that there was, under chambers, there was not enough corroboration here. The kind of corroboration, if we want to go there, the kind of corroboration that chambers talks about, both chambers and Washington versus Texas, both of those cases deal with evidence where there was direct evidence linking the individual at issue there with the crime. In Washington, we have Mr. Washington who was charged with shooting and being an accomplice to shooting and killing his rival. Mr. Fuller was the one who made the statement that he sought to introduce later. Fuller was with Washington when he shot the man. Fuller was the shooter. And the testimony that they wanted to introduce in Washington would have been, Fuller would have said, I was with Washington and Washington tried to stop the shooting. That's evidence linking Fuller to the crime, corroborating the fact that Fuller was the shooter and Washington was attempting to stop it. Similarly in chambers, we have direct evidence linking Gable McDonald to the offense. We don't have anything like that here. What we have is, as the prosecutor in the state court level said, these are all peripheral matters. The fact that we have, Jesse Watson has a drug problem. The fact that he may have committed burglaries in the past, that he may have been with somebody who had a history of burning things to destroy the evidence. These are peripheral matters not linking them or anybody at all to either one of these men to the actual offense itself. I think that the state court was correct in finding the chambers does not mandate that this evidence be introduced and the state court was correct in saying that it should be excluded. Part of the district court's rationale when she reviewed the Hagueus petition, a very short part of her rationale, was that the Florida state hearsay rule talks about availability and that if the declarant is available, then you don't get the special provision where you go for and you can then use the hearsay. Is it true then that the defendant at trial did not try to put Mr. Watson or Mr. Gibbons on the stand to testify? He was precluded from doing that. They never got to that level. Tell me how that happened. What happened was when they investigated, they took Mr. Watson and Mr. Gibbons, they took their depositions, took statements from them outside of court. When they sought to introduce that at court, the state court said you can't introduce that because it's not reliable enough. This hearsay is not corroborated. I'm going to prevent you. You may not introduce the statement of Mr. Hodges. I'm talking about the declarant, Mr. Watson. Mr. Watson? Yes. Did the defendant attempt? The rule speaks to the declarant's availability. I misunderstood. He did not attempt to introduce Mr. Watson. Did the trial court preclude him that he wanted to do so? Had he wanted to put on the circumstances that he thought would corroborate his theory, his cohort who had burned a boat before, the fact that there was also a wrecker in Mr. Watson's yard, the fact that Mr. Watson or his cohort had perhaps dated one of the women? Did defense counsel attempt to put any of that evidence on to try to shed suspicion on those folks? Not through the actual declarants, not through Watson, and not through Aaron Gibbons. Those individuals never actually called. But through anybody, through the people who could testify about the similar wrecker, the person who could testify about the burned boat? No, only through Mr. Hodges. Hodges is the one that he wanted to call on those things. He would have had the ability, had he chosen to introduce evidence of the circumstances that he thought would corroborate Hodges, but did not even attempt to do that. He could have called Watson, he could have called Gibbons, but honestly, if he had done that, those witnesses both said, I didn't say what Hodges said. It wasn't part of it that Gibbons had a pockmarked face, just as did the defendant. Let's get into that. He didn't try to attempt to have the witness indicate whether or not a photograph of Gibbons looked similar to the person that she saw run away from the burn. He didn't try to do any of the kinds of things you'd normally try to do to throw suspicion on somebody else. Right, he didn't. Barbara Davis is the witness that you're talking about. She was the one who lived nearby where the burning car was observed, and she's the person that said in court, that's the man, Mr. Pittman. Did she force him not to apply a procedural bar here? No, no, it wasn't. The procedural bar dealt only with the subsequent South Carolina case, Holmes. That's the procedural bar that it applied. Well, didn't the district court say that she was procedurally barred from reviewing the claim, and then said, but even if I'm not, I'll go to the merits? I could be mistaken. As I read it, she said she was procedurally barred, and that strikes me as just dead wrong. When a state declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal Habeas Review. That's clear. That's the law. In my brief, I advise the court that in my opinion, there's no reason why this court could not consider the constitutional dimensions of what was presented in state court at the appellate level. There was a procedural bar applied as to Holmes versus South Carolina, because as the court knows. Yes, that I understand. That wouldn't be a bar. That would just be an application of AEDPA, but it's not a procedural bar. It's just you can't rely on Holmes because AEDPA applies. Holmes postdated everything that happened in this case, but it's not a procedural bar in the sense that you didn't follow state law in the way you had to present the claim at the time it arose. Correct. The district court here, at least in my opinion, seems to have done a little bit of everything. Talked about state evidence rules, then moved to constitutional merits, then a little procedural bar, and at the end of the day, rejected the claim in total. Right, but to the extent the district court rejected the petition on the grounds that it, as a federal Habeas collateral reviewing court, was procedurally barred from reviewing the merits of the claim, that's just plain wrong. I don't understand it. I think it is. I have to agree. We have to look to what the state court did. The state court did apply procedural bar in terms of whether Holmes... I understand, but that did not preclude the federal court from performing its obligation to determine whether there was a violation of the Constitution. Which, as we know, it ultimately did. I understand. That's the extent of my argument. All right, please court, a couple quick points. First, Mr. Pittman did not know anything about the charge regarding his sister-in-law. He didn't know about it until he received a notice it was null-profit. So, it wasn't a basis  It wasn't a basis for anything. So, Mr. Pittman, as I understand it, it struck me in listening, we have a situation where the judge doesn't accept the mitigation. And as the court has pointed out and the state has argued, and part of that is because it doesn't fit the facts. Mr. Pittman contended he was innocent and that Mr. Watson and Mr. Gibbons or somebody else did it, he didn't know who, he didn't do it. The fact that it doesn't fit his mental condition doesn't fit the facts actually sort of supports the second argument, the need to present the evidence of other people. And in terms of that, that was part of the Brady claim that COA was not granted on, the state misled the defense and said Aaron Gibbons and Watson had taken off and weren't available. That's why he didn't try to call them because he was told they weren't there. The state told him that. After the depo, they took off. As for showing the picture to the woman who had said it looked like Mr. Pittman was the person at the car, the testimony had already happened. The defense wanted to do that, wanted to have the fingerprint checked because there were fingerprints but the judge wouldn't let them do that. There wasn't a need to do that. And to just introduce something about somebody else, it wouldn't be relevant without the fact that the person had confessed. I mean just introducing the fact that Mr. Watson was seen with a blue tow truck or a wrecker, it would be unconnected to anything. You need the fact the person had confessed to their stepfather to make it relevant. It certainly had... See I thought, and you can help me with this, and maybe this is where the issue really comes down. Dee testifies at great length at the trial, the penalty phase. He testified about the totally dysfunctional family life. He testifies about the mental disabilities of Pittman's family, paranoid schizophrenic biological father, paranoid schizophrenia of a half-brother, the addiction to alcohol or some other major psychoactive substance. He says the family was totally dysfunctional. He talked about the extensive abuse that the petitioner faced at the hands of his mother. He says that Pittman told him he had been raped four times when he was eight or nine years old by a man he couldn't identify and two other occasions by a man he could but did not know his name. He testified that the brain damage manifested itself later in life. He said boiling it all down, this had a powerful effect on the defendant and his ability really, his inability to control his behavior in the time. The impairment of cognitive function, memory impairment, other scattered findings, difficulties in emotional control all bore upon his conduct at the time. That's a thrust of what Dee is saying by way of what the trial court judge said among other things. He says taking all the mitigation in a light most favorable to the defendant, I just don't believe that they have much connection to the murders because of the record. The extrinsic facts surrounding the record here are that the record reflects cutting the phone lines, destroying the evidence, burning the house down, burning the car, coming up with an alibi, all of which suggests something very different from the circumstances of his disability made him do it or had an important impact on his conduct. But it was the extrinsic circumstances in the record that led the trial court ultimately to reject the mitigation claim. What am I misapprehending in suggesting that? Why am I misreading the opinion of the trial court in saying that? There's no support for that trial court's conclusion. It's based upon a rejection of Carl Hughes' testimony. The state presents Carl Hughes, a jailhouse informant, as establishing what happened.  it was a spur of the moment thing that it happened because the sister rejected the jury. A jury and the court were free to find that he cut the phone lines. And we know that the house was burned to the ground after he had stabbed to death three of its occupants and that the car was burned. These are extrinsic facts, not in dispute, right? The state didn't even seek CCP. They didn't go after it. That's not my question. Perhaps they could have. Perhaps they should have. I'm not asking you about what they could have done. Well, my point is there was no evidence of a premeditated design. The judge is relying upon that to reject the mitigation, but he has really no basis for that. I guess that's what I don't it must be me and I'm missing it. But why is there no basis if the phone lines were cut and the house was burned to the ground after the throats were slit? Who knows? Why isn't that evidence, powerful evidence, of an intention to avoid detection and destroy evidence of the corpus delicti of a crime? There is no evidence of when the phone lines were cut. Why would you cut them after everybody was dead? Maybe he didn't cut them at all. Nobody knows. All we know is they were cut. We also know the house was burned to the ground. We know the house was burned to the ground and the person... Can't you draw an inference from that? I might not. Perhaps there's rebutted evidence, but why couldn't a trial court and a trial jury reasonably draw an inference from the fact that after the throats were slit, the house was doused in gasoline and burnt to the ground and then the car was burned as well? That certainly reasonably suggests it doesn't ineluctably compel, but it reasonably suggests, does it not, that there was an effort to destroy the evidence of the crime? An effort to destroy evidence does not negate the mitigation, though. And Carl Hughes testified, and it was the state's version of what happens step by step. Carl Hughes' testimony, then, is being rejected. I don't... I mean, I never was convinced by Carl Hughes in the first place because my client tells me he's innocent. He testified in this case, and we have evidence just as well. The problem is, though, that you and I are both stuck with the verdict of the jury in this case. The jury didn't hear the evidence because it was excluded. Well, they heard that the phone lines were cut. They didn't hear that Mr. Gibbons and Mr. Watson... No, no, no, that's not my question, though. They did hear that the lines were cut. They did hear that the lines were cut, but we've got two issues in this case, and the second one concerns the exclusion of the evidence about Mr. Watson and Mr. Gibbons... No, I understand that issue. I'm just trying to analytically sort it out and take it piece by piece. The jury also heard, did they not, that the house was burned to the ground. And three jurors voted for a life sentence. I understand that. There was obviously something there. This is not a unanimous death recommendation. There's something there. And they're not all buying this notion of this deliberate passion. Something's going on. And if the mitigation doesn't fit the deliberate passion that the     mitigation, because the brain damage, the sexual abuse, the mental health issues, the mental health issues, the mental health issues, the mental health issues, the mental health issues, the mental    the mental health issues, the mental health issues. This is all there. And if it's inconsistent with the fact of the crime, maybe it's the wrong person. In this case, the defense was not able to present the best evidence of its defense. And the Florida Supreme Court said that was to be reviewed in federal court. Here, when addressing the hearsay chambers issue, they only address the evidentiary aspect. And then they later say it's race judicata. That doesn't it's not a procedural bill. I'll ask you a question talking about the chambers issue, the Hodges, Watson matter. Would it be fair on the whole to characterize the body of evidence presented as there was some stuff that corroborated and there was a lot of stuff that didn't corroborate the account that Hodges was offering? Wasn't there evidence that undermined the trustworthiness and reliability of Hodges' account in this record, fairly speaking, as well as some evidence that might otherwise support it? I mean, I thought it was just simply because it was on death row. It was sort of the judge's view. No, no, beyond. Your answer to me, then, there was no evidence in this record from which one could infer that Hodges' account was not reliable and trustworthy? Wasn't there evidence that undermined the credibility of the Hodges' account? I mean, I'm not sure what somebody else would think would undermine the account. I mean, he did burn the letter. He was on death row and he was afraid guards would have it. Is it accurate to say that the account that Hodges gave changed over time, that he offered a letter on round two that was not there on round one when he first said, I got this letter, the letter's gone with the wind, but here's what the letter said? Well, I'm not sure that he was asked specifically in the first round the same questions he was asked in the second round. There were more probing questions. Okay. I've got it. I don't mean to cut you off. You were just helping me with my questions. One question I have, there's a footnote in one of the briefs. Before your trial counsel for the defendant had the fortuity of getting this letter from Hodges, they had to have a theory. The theory before that happened was going to be that to point the finger at the estranged wife, that she wanted to kill her family for some inheritance they supposedly were going to give her and she didn't like them, they were taking her children away. Was that explored at all during the trial, that particular theory? It was not explored in the trial because it got interrupted with this other sort of going I'm going to be going after Watson and Gibbons. It's inconsistent with that to also be going after the ex-wife. He knew he wasn't when that evidence didn't come in. No, he didn't. The ruling that that evidence couldn't come in didn't happen until late in the trial. Right. As the brief explains it procedurally, at the time that she was on the stand, the trial court had not yet ruled on the admissibility of the testimony implicating Mr. Watson, the hearsay testimony. Correct. As you put it, the defense lawyer not knowing whether he'd be able to go after Watson decided to not press the issue with the relative because then he'd be pointing fingers two different ways and might lose credibility. Correct. This is coming up in the middle of the trial and it made it a difficult situation for everybody. Help me just factually with one thing. Mr. Hodges gave his account. Watson was never called to testify, but Watson denies the claim in the letter somewhere, right? He denies that he had confessed to the murder although there are some Where did he do that? Where do I find that in the record? To whom did he offer this denial? I thought it was in the statement. What statement is the statement? There were the depots that were done of Gibbons and Watson. Watson was deposed. That's my recollection. Under oath and in the course of that, I just want to be sure that I have this factually correct. In the course of his deposition, he says under oath, it ain't so. I didn't murder these people. I didn't burn the house down. Just a flat out denial. I believe that's correct, although he acknowledges a number of facts that Mr. Hodges had also I understand that. Where I would find his denial of the claim that Hodges had made? I thought it was in the case. In Hodges's case, there were also letters written by Watson that Watson then later said was a lie. There is one episode. Did those letters in the Hodges capital case go to the murder here in this case? No. I understand. It's a history. I understand that. I'm just saying with respect to Watson's denial of the claim that Hodges made, I will find that in Watson's deposition. I believe so. Gibbons, on the other hand, also initially denied the other crime where he set the fire to both, but then later admitted that it happened. Then there was also the person who was with him. You said earlier that Gibbons and Watson had taken off or left. Was that after they were deposed? That's when the defense attorney was told. What was discovered in post-conviction was that the prosecution actually had a new and correct address for Gibbons that they did not give to the defense attorney. After the depositions? After the depositions, yes. That was part of the investigation.  defense attorney said that Mr. Pittman's young daughter had, according to his ex-wife, had witnessed the murder of her grandmother by her uncle. That was not disclosed until post-conviction, but that would also support that the ex-wife and her boyfriend had done the murder. That was presented in the state court as newly discovered evidence. It doesn't present itself. Was the trial of defense counsel present at the deposition? I assume he was. Yes. He was told that after the deposition was over by the state, that Watson and Gibbons immediately took off and were not around. Thank you very much, counsel. We know that you are court-appointed and we very much appreciate you taking on the obligation of well and vigorously representing your client. We thank you as well, Mr. Freeland, for your efforts. We will be adjourned.